UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOSEPH WAYNE KRETZER,** | § | |
| **TDCJ No. 0382005,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-21-CA-0081-DAE** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

The matter before the Court is Petitioner Joseph Wayne Kretzer's petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (ECF No. 1).[1] Also before the Court are Respondent Bobby Lumpkin's answer and Petitioner's reply. (ECF Nos. 13 and 26). Petitioner's petition is denied for the following reasons.

## I.  Background

On August 13, 1984, Petitioner pleaded guilty in the 289th Judicial District Court of Bexar County, Texas, to the murder of Nguyet Vothi Keim in violation of Texas Penal Code § 19.02. (ECF No. 14-7 at 55, 61–62). He was sentenced to 40 years of imprisonment in the Texas Department of Criminal Justice (TDCJ) in accordance with the terms of a plea agreement. *Id*. He was released from custody to mandatory supervision on January 28, 1997. (ECF No. 14-9 at 34). His supervised release was revoked on March 1, 2019.[2] *Id*.

---

[1]      "ECF No." refers to the Electronic Case Filing number for documents docketed in SA-21-CA-0081-DAE. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

[2]      Petitioner's projected release date is September 13, 2025.  *See* https://inmate.tdcj.texas.gov/InmateSearch, search for "Kretzer, Joseph" last visited October 18, 2022.

Petitioner filed a state habeas application challenging the calculation of his sentence on December 11, 2019. (ECF No. 14-7 at 4–22). He claimed TDCJ violated his due process rights when it refused to restore his previously earned good-time credit and grant him street-time credit for his time on mandatory supervision. *Id*. at 10. He also complained TDCJ exceeded its authority when it extended the maximum expiration date of his sentence "over 16 years subjecting [him] to serve a 56-year term instead of the 40-year term of [his] plea bargain agreement." *Id*. His application was denied by the Texas Court of Criminal Appeals on the findings of the trial court and its independent review of the record on August 19, 2020. (ECF No. 14-1).

Petitioner now asserts an entitlement to federal habeas relief for three reasons. (ECF No. 1). First, he claims TDCJ violated his Fourteenth Amendment due process rights when it deprived him, without sufficient notice, of good-time and street-time credits after it revoked his supervised release. *Id*. at 6. Second, he maintains TDCJ violated the double jeopardy clause, and exceeded its statutory authority, by extending the maximum expiration date of his sentence. *Id*. Finally, he contends TDCJ violated the *ex post facto* clause when it retroactively applied current law after it revoked his mandatory supervision and denied him street-time credit for his time spent on mandatory supervision. *Id*. at 7. He asks the Court to order "TDCJ to credit him with all the calendar time he served on mandatory supervision as well as restore his previously accrued good-conduct time he earned between 04-19-1984 and 01-28-1997." *Id*.

## II.  Standard of Review

The writ of habeas corpus is "an extraordinary remedy" reserved for those petitioners whom "society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993).

It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It is granted by a federal court pursuant to 28 U.S.C. § 2254 only where a state prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Preiser v. Rodriguez*, 411 U.S. 475, 484–87 (1973). It is not granted to correct errors of state constitutional, statutory, or procedural law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Consequently, "federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). They may grant § 2254 relief only when a petitioner successfully raises a federal issue. *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). And they must find (1) the state court adjudicated the federal issue contrary to clearly established federal law as determined by the Supreme Court, or (2) the state court's decision was based on an unreasonable determination of the facts considering the record. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011). They must defer to state court decisions on the merits. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). They must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018) ("a state court's factual findings are presumed to be correct, and the applicant bears the burden of rebutting that presumption by clear and convincing evidence."). Finally, they must accept state court decisions on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

### III. <u>Analysis</u>

**A.**      <u>Due Process</u>

Petitioner claims TDCJ violated his Fourteenth Amendment due process rights by refusing to restore good-time credits he earned while previously incarcerated or grant street-time credits for his time on mandatory supervision. (ECF No. 1 at 6). He contends his "pre-revocation notices did not sufficiently notify [him] that the loss of street-time and the forfeiture of good-time" were possible consequences of a revocation proceeding. *Id*. He avers he was not afforded "the opportunity to prepare a defense." *Id*.

Under the United States Constitution, a prisoner is not guaranteed "good time credit for satisfactory behavior while in prison." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). A prisoner's interest in good time credit is embraced within the Fourteenth Amendment's liberty concerns only "when a state creates a right to good time credit." *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000). So, when the state creates such a right, a prisoner may be entitled "to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated." *Id*. Additionally, a prisoner does not have a "federal right" to apply street time accumulated while on conditional release toward his sentence upon his return to prison after a parole violation. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996); *Starnes v. Connett*, 464 F.2d 524, 524 (5th Cir. 1972).

Texas law provides "[g]ood conduct time applies only to eligibility for parole or mandatory supervision . . . and does not otherwise affect an inmate's term." Tex. Gov't Code Ann. § 498.003 (West). It does not create "a vested right, but rather . . . a privilege which may be forfeited, either by violating TDC[J]'s rules while in its custody, or by violating the guidelines of

4

a conditional release program." *Ex parte Henderson*, 645 S.W.2d 469, 472 (Tex. Crim. App. 1983). It also denies TDCJ the discretion to restore good-time credits once forfeited upon a revocation:

> On the revocation of parole or mandatory supervision of an inmate, the inmate forfeits all good conduct time previously accrued. On return to [TDCJ] the inmate may accrue new good conduct time for subsequent time served in [the Correctional Institutions Division]. The department may not restore good conduct time forfeited on a revocation.

Tex. Gov't Code Ann. § 498.004 (West).

Texas law also provides eligibility for street-time credit is determined by the statute in effect upon the revocation of parole. *Ex parte Hernandez*, 275 S.W.3d 895, 897 (Tex. Crim. App. 2009). Before September 2001, Texas Government Code § 508.283 provided forfeiture of street-time credit was an automatic consequence of a parole revocation. *Ex parte Spann*, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004). In 2001, Texas Government Code § 508.283 was amended to specify that only certain violent offenders—including individuals convicted of murder in violation of Texas Penal Code § 19.02—would forfeit street-time credit upon the revocation of their parole. *Id*. at 393–94. Section 508.283 states in relevant part:

> If the parole, mandatory supervision, or conditional pardon of a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. The remaining portion is computed without credit for the time from the date of the person's release to the date of revocation.

Tex. Gov't Code Ann. § 508.283(b) (West). Texas Government Code § 508.149(a) describes a person convicted of a violation of Penal Code § 19.02. Tex. Gov't Code Ann. § 508.149 (West). Consequently, a person convicted of first-degree murder must serve the remaining portion of his

sentence—without street-time credit—upon the revocation of his probation or mandatory supervision.

The trial court reviewing Petitioner's state writ application explained that he was not entitled to any street-time credit because he was serving a sentence for first-degree murder at the time he was released to mandatory supervision:

> To determine eligibility for "street-time" credit, the Court must consider the Applicant's status at the time of revocation. *Ex parte Hernandez*, 275 S.W.3d [895, 897] (Tex. Crim. App. 2009); *Ex parte Noyola*, 215 S.W.3d 862 (Tex. Crim. App. 2007). Texas Government Code Section 508.238(b) provides that "if the parole, mandatory supervision, or conditional pardon of a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. The remaining portion is computed without credit for the time from the date of the person's release to the date of revocation." Tex. Gov't Code Ann. § 508.149(b) (West 2012). Because Applicant was on mandatory supervision and is currently serving a sentence for first-degree murder, an offense listed in Tex. Gov't Code § 508.149(a), he is not entitled to "street-time" credit for the time from his release to the date of his revocation.

(ECF No. 14-9 at 35–36). The trial court also explained "[o]n the revocation of parole or mandatory supervision of an inmate, he forfeits all good conduct time previously accrued." *Id.* at 37 (citing Tex. Gov't Code Ann. § 498.004(b) (West 2012)). It concluded Petitioner "did not allege or prove facts which, if true, entitle[d] him to relief." *Id*. (citing *Ex parte Maldonado*, 688 S.W.2d 114 (1985)).

The Court observes the Texas Court of Criminal Appeals denied Petitioner's state writ application without a written order on the findings of the state trial court and on its independent review of the record. (ECF No. 14-1). The Court accordingly accepts the state trial court's findings and conclusions as the last reasoned opinion of the state courts. *See Kernan v. Hinojosa*, 578 U.S. 412, 416 (2016) (Sotomayor, J., dissenting) ("When faced with a state-court order that

denies a habeas petition without explanation, this Court has long presumed that the order agrees with the 'last reasoned state-court opinion' in the case unless there is 'strong evidence' to the contrary.) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 804–805 (1991)).

The Court finds that Petitioner provides no clear and convincing evidence to rebut the state court's finding that his due process rights were *not* violated when his good-time credit was not restored and his street-time credit for his time released to mandatory supervision was not granted. The Court further finds Texas Government Code § 498.004 gave Petitioner notice that TDCJ would not restore good-conduct credit forfeited upon a revocation.[3] And Texas Government Code § 508.283 gave Petitioner notice that TDCJ would not grant him street-time credit for the time he spent on mandatory supervision. Consequently, the Court finds Petitioner cannot show (1) the state court adjudicated a federal issue contrary to clearly established federal law as determined by the Supreme Court, or (2) the state court's decision was based on an unreasonable determination of the facts considering the record. *Harrington*, 562 U.S. at 100–01. The Court therefore further finds Petitioner is not entitled to federal habeas relief on this claim.

## B.   Double Jeopardy

Petitioner asserts TDCJ violated the double jeopardy clause, and exceeded its statutory authority, when it extended the maximum expiration date of his sentence. (ECF No. 1 at 6). He explains his 40-year sentence began on April 19, 1984. *Id*. Consequently, he opines his

---

3        In addition, Petitioner's claims regarding the loss of good-time credit are now likely moot because Petitioner was released on parole in December 2021. (ECF No. 22 at 1); *see Gray v. Dretke*, 135 F. App'x 711, 711-12 (5th Cir. 2005) (unpublished) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)); *Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994) (good-time credits apply only to an inmate's eligibility for parole or mandatory supervision and do not affect the length of the inmate's sentence).  Any revocation of Petitioner's parole also would not result in the restoration of his good-time credits. *Hallmark v. Johnson*, 118 F.3d 1073, 1075-76 (5th Cir.1997); Tex. Gov't Code Ann. § 498.004(b).

maximum expiration date was April 19, 2024. *Id*. But he maintains TDCJ, without statutory authority, extended his maximum expiration date to January 18, 2043—or more than 18 years beyond his original expiration date. *Id*. He argues this extension violated the double jeopardy clause. *Id*.

The double jeopardy clause bars successive prosecutions and successive punishments for the "same criminal offense." *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Requiring an inmate to serve the entire portion remaining on his sentence after his parole is revoked does not violate the multiple punishments prong of the double jeopardy clause. *Morrison v. Johnson*, 106 F.3d 127, 129 n.1 (5th Cir. 1997) (citing *Cortinas v. U.S. Parole Com'n*, 938 F.2d 43, 46-47 (5th Cir. 1991) ("We reasoned that the primary purpose of parole revocation proceedings is not to punish a violation of a criminal law, but to determine whether a violation of the terms of parole has occurred, notwithstanding the fact that parole revocation might result in further imprisonment.")); *see also United States v. Whitney*, 649 F.2d 296, 298 (5th Cir. 1981) ("[W]e decline to extend the double jeopardy clause to parole and probation revocation proceedings.").

Petitioner did not expressly assert a double jeopardy claim in his state habeas application. (ECF No. 14-7 at 4–22). But he did claim that TDCJ exceeded its statutory authority by extending his sentence:

> TDCJ has . . . extended my maximum expiration date over 16 years subjecting me to serving a 56-year term instead of the 40-year term of my plea bargain. This in effect is subjecting me to multiple punishments and causing me to suffer a deprivation of liberty greater than that which I was originally sentenced.

*Id*. at 10. So, his double jeopardy claim was not directly addressed by the state trial court. (ECF 14-9 at 33–38). But his application was denied by the Texas Court of Criminal Appeals on the findings of the trial court—and its independent review of the record. (ECF No. 14-1).

A federal habeas court focuses on the state court's ultimate legal conclusion, not "whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc).  Indeed, "state courts are presumed to know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

The Court finds that Petitioner's forfeiture of good-time and street-time credits did not unlawfully extend his sentence beyond the original term imposed by the trial court. *See Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994) ("Good time credit has no effect on the length of sentence imposed."). The Court further finds that Petitioner provides no clear and convincing evidence to rebut the state court's unarticulated finding on his state writ application that TDCJ did not err when it extended the maximum expiration date of his sentence. Consequently, the Court also finds that Petitioner cannot show (1) the state court adjudicated a

federal issue contrary to clearly established federal law as determined by the Supreme Court, or (2) the state court's decision was based on an unreasonable determination of the facts considering the record. *Harrington*, 562 U.S. at 100–01. The Court further finds Petitioner is not entitled to federal habeas relief on this claim.

## C.   *Ex Post Facto*

Petitioner asserts TDCJ violated the *ex post facto* clause when it retroactively applied current law and denied him street-time credit for the time he spent on mandatory supervision. (ECF No. 1 at 7). He notes he committed his offense in 1984. *Id*. He claims the current law should only apply to convictions which occurred after 1996—the year the law went into effect. *Id*. He raises a new claim which he did not identify in his state habeas application. (ECF No. 14-7 at 4–22).

A federal habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "[A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief." *Orman v. Cain*, 228 F.3d 616, 619–20 (5th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1)). This means a federal habeas petitioner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. O'Connor*, 404 U.S. 270, 276 (1971). So, federal habeas petitioner is procedurally barred from presenting "new legal theories or entirely new factual claims in his petition to the federal court." *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir. 1983).

Petitioner explains "[t]he exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court.  . . . The habeas client need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement." (ECF No. 26 at 10) (citing *Whitehead v. Johnson*, 157 F. 3d 385 (5th Cir. 1988)). He contends he brought the same argument in the state courts as he has in federal court that is equal in substance to an *ex post facto* violation. *Id*.

In his state habeas application, Petitioner does not claim TDCJ retroactively applied current law when it denied him street-time credit. (ECF No. 14-7 at 4–22). Consequently, his claim is wholly unexhausted and procedurally defaulted. But even accepting Petitioner's assertion that he has exhausted, and his claim is not procedurally barred, he is still not entitled to relief.

"The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325–326 (1867).

Under Texas law, eligibility for street-time credit is determined by the statutes in effect when an inmate's mandatory supervision or parole is revoked. *Hernandez*, 275 S.W.3d at 897; *Ex parte Noyola*, 215 S.W.3d at 867. Before September 2001, Texas Government Code § 508.283 provided forfeiture of street-time credit was an automatic consequence of a parole revocation. *Ex parte Spann*, 132 S.W.3d at 393. In 2001, Texas Government Code § 508.283 was amended to specify that only certain violent offenders—including individuals convicted of

murder in violation of Texas Penal Code § 19.02—would forfeit street-time credit upon the revocation of their parole. *Id*. at 393–94.

The Court finds that TDCJ properly determined that Petitioner was not eligible for street-time credit under the current law because his conviction was for first-degree murder. It further finds that TDCJ would have reached the same conclusion under the law in effect at the time of Petitioner's offense. It also finds that TDCJ did not impose additional punishment to the 40-year prison sentence originally prescribed by the sentencing court. *Weaver*, 450 U.S. 28. Consequently, it finds that TDCJ did not violate the *ex post facto* clause, and Petitioner is not entitled to federal habeas relief on this claim.

## IV. <u>Certificate of Appealability</u>

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Reasonable jurists could not debate the Court's reasoning for denying Petitioner's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). The Court will not issue a certificate of appealability.

## V.  Conclusion and Order

The Court concludes that Petitioner's claims are without merit, and he is not entitled to federal habeas relief. The Court further concludes that Petitioner is not entitled to a certificate of appealability. Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Joseph Wayne Kretzer's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this 19 day of October, 2022.

_____
**DAVID A. EZRA**
**SENIOR U.S. DISTRICT JUDGE**